# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Paul Andrus and Ronald Berresford, individually and as representatives of a class of similarly situated persons, and on behalf of the New York Life Agents Progress-Sharing Investment Plan and the New York Life Insurance Company Employee Progress-Sharing Investment Plan,<br><br>        Plaintiffs,<br><br>   v.<br><br>New York Life Insurance Company, New York Life Investment Management LLC, New York Life Investment Management Holdings LLC, Cornerstone Capital Management Holdings LLC, Cornerstone Capital Management LLC, Board of Trustees of the New York Life Agents Progress-Sharing Investment Plan, Board of Trustees of the New York Life Insurance Company Employee Progress-Sharing Plan, Maria J. Mauceri, Barry A Schub, John Y. Kim, Arthur H. Seter, Drew E. Lawton, Michael M. Oleske, Robert J. Hynes, and Johns Does 1–30,<br><br>        Defendants. | Case No. 1:16-cv-05698-KPF<br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |

## TABLE OF CONTENTS

INTRODUCTION..................................................................................................................1

BACKGROUND ..................................................................................................................1

   I.   The Complaint ..........................................................................................................1

   II.   Mediation and Informal Discovery ..........................................................................3

   III.  Settlement Terms......................................................................................................4

   IV.  Preliminary Approval of Settlement.........................................................................5

   V.   Class Notice and Reaction to Settlement .................................................................6

   VI.  Review and Approval by Independent Fiduciary......................................................7

ARGUMENT ......................................................................................................................8

   I.   Standard of Review ..................................................................................................8

   II.   The Settlement is Fair, Reasonable, and Adequate .................................................10

       A.   The Complexity, Expense, and Likely Duration of the Litigation ............................10

       B.   The Reaction of the Class to the Settlement ...........................................11

       C.   The Stage of the Proceedings and the Amount of Discovery Completed.................12

       D.   The Risks Associated with the Litigation .................................................13

       E.   The Ability of Defendants to Withstand a Greater Judgment..................................15

       F.   The Range of Reasonableness of the Settlement Fund in Light of the
           Possible Recovery and Attendant Risks ...................................................15

   III.  The Settlement Process Was Fair, Reasonable, and Adequate.................................16

   IV.  The Class Notice Was Reasonable .........................................................................17

CONCLUSION ...................................................................................................................19

# **TABLE OF AUTHORITIES**

## **Cases**

*Allen v. Dairy Farmers of Am., Inc.,* 2016 WL 3208947 (D. Vt. June 7, 2016)............................16

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ................................................15

*Amron v. Morgan Stanley Inv. Advisors Inc.*, 464 F.3d 338 (2d Cir. 2006) ................................13

*Charron v. Wiener*, 731 F.3d 241 (2d Cir. 2013) ........................................................11

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)..........................................9

*Clark v. Ecolab Inc.*, 2009 WL 6615729 (S.D.N.Y. Nov. 27, 2009).........................................8

*D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) ..............................................10, 15

*Fleisher v. Phoenix Life Ins. Co.*, 2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015).........................17

*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).......................................9

*Haar v. Allen*, 2017 WL 1387882 (2d Cir. Apr. 18, 2017)............................................16, 17

*Hecker v. Deere & Co*, 556 F.3d 575 (7th Cir. 2009)....................................................14

*Horton v. Metropolitan Life Ins. Co.*,
1994 U.S. Dist. LEXIS 21395 (M.D. Fla. Oct. 25, 1994) ................................................15

*In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164 (S.D.N.Y. 2000)..............10

*In re Checking Account Overdraft Litig.*, 830 F.R.D. 1330 (S.D. Fla. 2011)..............................16

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
2007 WL 2230177 (S.D.N.Y. July 27, 2007) .............................................................17

*In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004) ..............................12

*In re Marsh ERISA Litig.*, 265 F.R.D. 128 (S.D.N.Y. 2010).............................................14

*In re Med. X-Ray Film Antitrust Litig.,* 1998 WL 661515 (E.D.N.Y. Aug. 7, 1998)....................10

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
246 F.R.D. 156 (S.D.N.Y. 2007) .......................................................................11

*In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57 (S.D.N.Y. 1993) .............................18

*In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104 (S.D.N.Y. 1997)................................13, 15

*In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132 (2d Cir. 1998) ...............................................8

*In re Rite Aid Corp. Sec. Litig.,* 146 F.Supp.2d 706 (E.D. Pa. 2001) ..........................................16

*In re WorldCom, Inc. ERISA Litig.,* 2004 WL 2338151 (S.D.N.Y. Oct. 18, 2004) ...............10, 13

*Joel A. v. Giuliani*, 218 F.3d 132 (2d Cir. 2000) ...........................................................................8

*Kemp-DeLisser v. Saint Francis Hosp. & Med. Ctr.*,
2016 WL 6542707 (D. Conn. Nov. 3, 2016) ........................................................9, 10, 12, 14, 17

*Langford v. Devitt*, 127 F.R.D. 41 (S.D.N.Y. 1989)......................................................................17

*Leber v. Citigroup 401(k) Investment Cmte.*,
2014 WL 4851816 (S.D.N.Y. Sept. 30, 2014)................................................................................13

*Maley v. Del Glob. Techs. Corp*, 186 F. Supp. 2d 358 (S.D.N.Y. 2002) .....................................10

*Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072 (2d Cir. 1995) ..................................8

*Moore v. Verizon Communications Inc.*, 2013 WL 4610764 (N.D. Cal. Aug. 28, 2013) .............11

*Moreno v. Deutsche Bank Americas Holding Corp.*,
2016 WL 5957307 (S.D.N.Y. Oct. 13, 2016) ...............................................................................13

*Newbridge Networks Sec. Litig.,* 1998 WL 765724 (D.D.C. Oct. 23, 1998)................................16

*Perkins v. Linkedin Corp.*, 2016 WL 613255 (N.D. Cal. Feb. 16, 2016) .....................................11

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ................................................................17

*Tibble v. Edison Int'l*, 843 F.3d 1187 (9th Cir. 2016) ..................................................................10

*Velez v. Novartis Pharmaceuticals Corp.*, 2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010) ...........15

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005) ...................8, 9, 11, 16, 18

*Weinberger v. Kendrick*, 698 F.2d 61 (2d Cir. 1982) ................................................................9, 18

*White v. Nat'l Football League*, 822 F. Supp. 1389 (D. Minn. 1993) ...........................................15

**Rules, Regulations, and Statutes**

68 Fed. Reg. 75632 ...........................................................................................................7

75 Fed. Reg. 33830 ...........................................................................................................7

Fed. R. Civ. P. 23(c)(2)(B) .............................................................................................17

Fed. R. Civ. P. 23(e)(2)......................................................................................................8

**Other Authorities**

4 NEWBERG ON CLASS ACTIONS (4th ed. 2002) ..............................................................8

## INTRODUCTION

On February 16, 2017, this Court preliminarily approved the Parties' Class Action Settlement Agreement, which resolves Plaintiffs' claims against Defendants under ERISA regarding the utilization and retention of the MainStay S&P 500 Index Fund in the New York Life Insurance Company Employee Progress-Sharing Investment Plan ("Employee Plan") and the New York Life Agents Progress-Sharing Investment Plan ("Agents Plan") (collectively, the "Plans"). *See ECF No. 69.*[1] The Court found on a preliminary basis that the terms of the Settlement are "sufficiently fair, reasonable, and adequate to warrant sending notice of the Settlement to the Settlement Class," and approved the distribution of the Settlement Notices as specified in the Settlement Agreement. *Id. at ¶¶ 1(d), 5.* Since that time, only one Class Member out of more than 16,000 has objected to the Settlement (on grounds that have nothing to do with the terms of the Settlement), and an independent fiduciary review has confirmed that the Settlement is fair, reasonable, and adequate. *See Declaration of Kai Richter dated June 1, 2017 ("Third Richter Decl."), Ex. C.* Accordingly, Plaintiffs respectfully request that the Court grant final approval of the proposed Settlement, which the Independent Fiduciary found provides a "very meaningful recovery" to the Settlement Class. *Id. at 6.* Defendants do not oppose this motion as parties to the Settlement.

## BACKGROUND

### I.    THE COMPLAINT

Plaintiffs initiated this action by filing their Class Action Complaint ("Complaint") on July 18, 2016, on behalf of themselves, the Plans, and the participants and

---

[1] The Settlement Agreement appears on the docket at ECF No. 66-1.  All capitalized terms have the meanings assigned to them in Article 2 of the Parties' Settlement Agreement, unless otherwise specified herein.

beneficiaries of the Plans who invested in the Mainstay S&P 500 Index Fund within six years of the date the action was filed.[2] *See ECF No. 1.* The gravamen of the Complaint is that Plaintiffs, the Plans, and members of the class were financially harmed by the improvident retention of the MainStay S&P 500 Index Fund in the Plans' investment lineup, when a less-expensive alternative investment was readily available from Vanguard. *Id., ¶¶ 1, 4-5, 178.* The Defendants are the Plans' fiduciaries and other persons who allegedly profited from the alleged imprudent retention of the MainStay S&P 500 Index Fund in the Plans. *Id., ¶¶ 22-123.*[3]

From the beginning of the class period in 2010 until July 19, 2016, the MainStay S&P 500 Index Fund was included and retained in the Plans' investment lineup. *Id., ¶¶ 4, 177.* The Complaint alleges that it was imprudent for the Plans' fiduciaries to retain the MainStay S&P 500 Index Fund because the MainStay S&P 500 Index Fund had annual costs of 35 basis points (0.35%) per year, whereas a comparable index fund offered by Vanguard had annual expenses of only 2 basis points (0.02%) per year. *Id., ¶ 4.* Effective July 19, 2016, New York Life removed the MainStay S&P 500 Index Fund from the Plans' menu of investment options and replaced it with the Vanguard Institutional Index Fund at the close of business that day. *Id., ¶ 177.* Plaintiffs allege that by this point, however, the Plans' participants already had incurred significant losses due to excess fees. During the relevant period, hundreds of millions of dollars of Plan assets were invested in the MainStay S&P Index Fund. *Id., ¶ 178.* Based on the significant amount of

---

[2] The ERISA claims at issue are subject to a six-year statute of repose. *See* 29 U.S.C. § 1113(1).

[3] The Plans' fiduciaries include New York Life Insurance Company ("New York Life"), the Agents Plan Board, the Employee Plan Board, and the individuals referenced in the Complaint. *Id., ¶ 200.*

monies that were invested in the MainStay S&P 500 Index Fund, Plaintiffs estimate that the Plans incurred approximately $3.9 million in excess costs during the class period (from July 18, 2010 to July 19, 2016). *See Declaration of Kai Richter dated Feb. 14, 2017 ("First Richter Decl."), ECF No. 66, ¶ 5.* These allegedly excessive costs were deducted from Class Members' retirement accounts. *ECF No. 1, ¶ 152*

## II.   MEDIATION AND INFORMAL DISCOVERY

Prior to the deadline for Defendants to answer the Complaint, the Parties agreed to engage in mediation. *ECF No. 56.* In the absence of mediation, Defendants would have moved to dismiss the action and would have asserted numerous defenses to Plaintiffs' claims. *Settlement, ¶ 1.2.* In advance of the mediation, Defendants produced pertinent documents and information to Class Counsel, *id., ¶ 1.3,* including Plan documents and disclosures, relevant minutes from Board meetings relating to the Plans, information regarding the Plans' holdings in the MainStay S&P 500 Index Fund, and the expenses and performance of the fund. *First Richter Decl., ¶ 11.* In addition, Class Counsel engaged a consulting expert to assist in analyzing the data that was produced by Defendants and assessing Class Members' damages. *Id.*

The Parties agreed to engage Hunter R. Hughes, III as mediator. *First Richter Decl., ¶ 10.* Mr. Hughes is an experienced and well-respected mediator, who has successfully resolved numerous ERISA cases and other actions. *Id. ¶ 10 & Ex. 2.* The Parties engaged in a full-day, in-person mediation with Mr. Hughes on November 4, 2016. *See ECF No. 58.* Through arms-length mediation with Mr. Hughes, the Parties reached a settlement-in-principal, subject to Court approval. *Id.* Thereafter, the Parties negotiated the comprehensive Settlement Agreement that is the subject of this motion.

### III.   SETTLEMENT TERMS

Under the Settlement, Defendants will contribute a gross settlement amount of $3 million to a settlement fund (the "Gross Settlement Fund") for the benefit of the Settlement Class.[4]   *Id.,* ¶ *5.4.* Separate from the Gross Settlement Fund, Defendants also will pay up to $50,000 toward the cost of administering the settlement. *Id.,* ¶ *5.7.*

The Gross Settlement Fund will be distributed to Class Members after deductions are made for any amounts approved by the Court for attorneys' fees and costs and service awards to the class representatives.[5] *Id.,* ¶ *5.8.* Following any such deductions, payments to Class Members will be according to the Plan of Allocation specified in the Settlement. *See Settlement, Art. 6.* Under the Plan of Allocation, the Settlement Administrator will determine each Class Member's "Average MainStay Account Balance," which consists of the average, aggregate quarter-ending account balance invested in the MainStay S&P 500 Fund for the period July 18, 2010 through July 19, 2016 (the Class Period covered by the Settlement). *Id.,* ¶ *6.4.1.* Each eligible Class Member will then receive a pro rata

---

[4] The Settlement Class is defined as: "All persons who participated in the Plans whose Plan account included an investment in the MainStay S&P 500 Fund at any time during the Class Period, including any Beneficiary of a deceased person who participated in the Plans at any time during the Class Period, and/or, Alternate Payees, in the case of a person subject to a Qualified Domestic Relations Order who participated in the Plans at any time during the Class Period." *Settlement,* ¶ *2.42.* The "Class Period" runs from July 18, 2010 to July 19, 2016. *Id.,* ¶ *2.12.*

[5] In accordance with Paragraphs 5.7, 7.1, and 7.2 of the Settlement Agreement, Plaintiffs have separately moved for approval of (1) attorneys' fees in the amount of $1,000,000, out-of-pocket litigation costs in the amount of $13,534.73, and class representative service awards in the amount of $10,000 to the named Plaintiffs, to be paid from the Gross Settlement Fund; and (2) $50,000 in settlement administration expenses, to be paid directly by New York Life. *See Pls' Motion for Fees, Expenses, and Service Awards (ECF No. 73); Pls' Amended Motion for Fees, Expenses, and Service Awards (ECF No. 76).* The Settlement Agreement also permits Plaintiffs to request Settlement administration expenses above $50,000 to be paid from the Gross Settlement Fund, including a contingency reserve for post-approval administration expenses. *See Settlement,* ¶ *2.30.* However, Plaintiffs are not seeking any additional expenses from the Gross Settlement Fund for settlement administration. *Third Richter Declaration,* ¶ *7.*

share of the settlement fund based on his or her Average MainStay Account Balance compared to the sum of the Average MainStay Account Balances for all Class Members. *Id., ¶ 6.4.2.*

Current Participants will have their Plan accounts automatically credited with their share of the Settlement Fund. *Id., ¶ 6.5.* Former Participants are required to submit a claim form, which allows them to elect to have their distribution rolled over into an individual retirement account or other eligible employer plan, or to receive a direct payment by check. *Id., ¶ 6.6.*

In exchange for the relief provided by the Settlement, the Settlement Class will release Defendants and affiliated persons and entities from all claims:

- That were asserted in this lawsuit, or that arise out of the conduct alleged in the Complaint, regarding holdings in the MainStay S&P 500 Fund for the Plans;

- That relate to: (1) the selection, oversight, retention, or performance of the MainStay S&P 500 Fund, (2) fees, costs, or expenses for the MainStay S&P 500 Fund, and (3) disclosures or failures to disclose information regarding the MainStay S&P 500 Fund;

- That would be barred by *res judicata* based on the entry by the Court of any Final Approval Order;

- That relate to the direction to calculate, the calculation of, and/or the method or manner of allocation of the Settlement Fund pursuant to the Plan of Allocation; or

- That relate to the approval by the Independent Fiduciary of the Settlement Agreement, unless brought against the Independent Fiduciary alone.

*See Settlement, ¶¶ 2.3.7, 2.3.8, 8.1.*

## IV.   PRELIMINARY APPROVAL OF SETTLEMENT

On February 16, 2017, the Court issued an Order granting preliminary approval of the proposed Settlement. *See ECF No. 69.* In its Order, the Court preliminarily certified the Settlement Class for Settlement purposes, and found that the terms of the Settlement

were "sufficiently fair, reasonable, and adequate to warrant sending notice of the Settlement to the Settlement Class." *Settlement,* ¶¶ *1(d), 4.*[6] In addition, the Court appointed Analytics, LLC ("Analytics") to serve as the Settlement Administrator, distribute the Settlement Notices, and carry out the other duties specified by the Settlement Agreement. *Id., ¶ 3.*

## V.    CLASS NOTICE AND REACTION TO SETTLEMENT

Pursuant to Paragraph 5 of the Court's Preliminary Order, Analytics mailed the appropriate Settlement Notice (and Former Participant Claim Form, if applicable) to each of the Class Members identified on the Class List prepared by Defendants. *See Declaration of Richard Simmons ("Simmons Decl."), ¶¶ 6-9 & Exs. 1-2.* In total, 16,164 Settlement Notices were mailed, including 11,665 Notices to Current Participants and 4,499 Notices to Former Participants. *Id., ¶ 8.*

Prior to sending these Notices, Analytics cross-referenced the addresses on the Class List with the United States Postal Service National Change of Address ("NCOA") Database. *Id., ¶ 7.* In the event that any Settlement Notices were returned, Analytics re-mailed the Notice to any forwarding address that was provided, and performed a skip trace in an attempt to ascertain a valid address for the Class Member in the absence of a forwarding address. *Id., ¶¶ 10-11.* As a result, the notice program was very effective. Out of 16,164 Settlement Notices that were mailed, only 1.4% were ultimately undeliverable despite these efforts. *Id., ¶ 12.*

---

[6] The Settlement Notices that the Court approved included one form for Current Participants, and one form for Former Participants (which included a Claim Form). *Id., ¶ 5 & Exs. 3-4.* After the Court's initial approval of the Settlement Notices, the parties proposed an addition to the Settlement Notice to Former Participants. *See ECF No. 70.* The Court approved the Settlement Notice as revised. *See ECF No. 71.*

In the event that any Settlement Class Members desired further information, Analytics set up a settlement website at www.newyorklife401ksettlement.com.  *Id., ¶ 15.* Among other things, the Settlement Website included: (1) a "Frequently Asked Questions" page containing a clear summary of essential case information; (2) a "Home" page and "Important Deadlines" page, each containing clear notice of applicable deadlines; (3) case and settlement documents for download (including the Complaint, Settlement Notices, Former Participant Claim Form, Preliminary Order, and Plaintiffs' motion papers in connection with their Motion for Approval of Attorneys' Fees, Expenses, and Class Representative Service Awards); and (4) email, phone, and U.S. mail contact information for Analytics. *Id.*  In addition, Analytics created and maintained a toll-free telephone support line (1-877-649-6856) as a resource for Class Members seeking information about the Settlement. *Id., ¶ 16.* This telephone number was referenced in the Settlement Notices, and also appears on the Settlement Website. *Id.*

As of the date of the instant motion, only one objection to the Settlement has been received.[7] *See Third Richter Decl., ¶ 5; Richter Declaration dated April 14, 2017 (Second Richter Decl."), Ex. 4, ECF No. 75-4.*  The objection contends that the case should have been dismissed, but does not contend that the Settlement is inadequate. *Id.*

## II.   REVIEW AND APPROVAL BY INDEPENDENT FIDUCIARY

Pursuant to Paragraph 3.1.1 of the Settlement and applicable ERISA regulations,[8] the Settlement also was submitted to an independent fiduciary, Nicholas Saakvitne, Esq., for review. *See Third Richter Decl., Ex. C.* After reviewing Settlement and other case

---

[7] This objection was sent to Class Counsel, but was not filed with the Court by the objecting Class Member, as required by the Court's Preliminary Order and as specified in the Settlement Notices. *See ECF No. 69 at ¶ 7; Simmons Decl., Exs. 1 & 2.*

[8] *See* Prohibited Transaction Exemption 2003-39, 68 Fed. Reg. 75632, as amended, 75 Fed. Reg. 33830 ("PTE 2003-39").

documents, and interviewing counsel for each of the Parties, the Independent Fiduciary found that the Settlement "is reasonable and provides a very meaningful recovery" for the Settlement Class. *Id. 6.* In addition, the Independent Fiduciary found that "the Plan of Allocation is well crafted[.]" *Id. at 8.* Accordingly, the Independent Fiduciary "approve[d] and authorize[d] the Settlement of Released Claims on behalf of the Plans." *Id. at 10.*

## ARGUMENT

### I.   STANDARD OF REVIEW

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of any settlement agreement that will bind absent class members. *Fed. R. Civ. P. 23(e)(2).* After notice to class members and a hearing, a court may approve a class action settlement if it is "fair, adequate, and reasonable, and not the product of collusion." *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000).

Whether to approve a proposed class action settlement is a matter of judicial discretion. *See Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995). However, there is a "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (internal quotation marks and citation omitted); *see also In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998); 4 NEWBERG ON CLASS ACTIONS ("NEWBERG") § 11:41 (4th ed. 2002).  As a result, "Courts should give proper deference to the private consensual decision of the parties . . . [and] should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation[.]" *Clark v. Ecolab Inc.*, 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009)

(citations omitted).  A court "must stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case" because "[s]uch procedure would emasculate the very the purpose for which settlements are made." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

In determining whether a proposed class action settlement is fair, reasonable, and adequate, courts review both the "substantive terms" of the settlement and the "process" by which the settlement was reached. *Weinberger v. Kendrick*, 698 F.2d 61, 73-74 (2d Cir. 1982). The following factors (the "*Grinnell* factors") guide the court's review: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all of the attendant risks of litigation. *Grinnell,* 495 F.2d at 463; *see also Wal-Mart Stores*, 396 F.3d at 117; *Kemp-DeLisser v. Saint Francis Hosp. & Med. Ctr.*, 2016 WL 6542707, at *7 (D. Conn. Nov. 3, 2016) (applying *Grinnell* factors in determining that recent ERISA class settlement was "substantively fair" for plan participants). Additionally, in regards to the settlement process, courts look for "arms-length negotiations", "experience[d]" counsel, and "effective representation of the class's interests" in the negotiations. *Weinberger,* 698 F.3d at 74.

## II.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

The *Grinnell* factors outlined above overwhelmingly favor approval of the Settlement in this case.

### A.   The Complexity, Expense, and Likely Duration of the Litigation

"Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub nom., D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).  ERISA cases are certainly no exception. *See Kemp-DeLisser,* 2016 WL 6542707, at *9 (finding complex damages analysis weighed in favor of ERISA class settlement); *In re WorldCom, Inc. ERISA Litig.*, 2004 WL 2338151, at *6 (S.D.N.Y. Oct. 18, 2004) (observing that ERISA fiduciary breach claims are "complex" and contain "inherent" risks in litigating them to their conclusion). Litigation such as this can take many years, and frequently involves appeals.  *See, e.g., Tibble v. Edison Int'l*, 843 F.3d 1187, 1191 (9th Cir. 2016) (outlining trial and appellate history of decade-long 401(k) investment fee case that ended, initially, with a partial verdict in favor of plan participants).  Thus, one of the main benefits of approving the Settlement is that it avoids further risk, delay and expense, and assures immediate relief to the Settlement Class. *See Maley v. Del Glob. Techs. Corp*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002); *In re Med. X-Ray Film Antitrust Litig.*, 1998 WL 661515, at *3 (E.D.N.Y. Aug. 7, 1998) ("[C]ontinued litigation would require significant amounts of time on the part of the litigants, with accompanying expense…Accordingly, the complexity of this case as well as the probable duration and expense of further litigation favor approval of the proposed settlement.").

### B.      The Reaction of the Class to the Settlement

With respect to the second factor, "the absence of substantial opposition is indicative of class approval[.]" *Wal-Mart Stores,* 396 F.3d at 118. As noted above, only one class member (representing less than one-hundredth of a percent of the Settlement Class) expressed opposition to the Settlement. *See supra* at 7. The Court may infer from this that the overwhelming majority of Class Members believe the Settlement is fair, reasonable, and adequate. *See Charron v. Pinnacle Group N.Y. LLC*, 874 F. Supp. 2d 179, 198 (S.D.N.Y. 2012) ("The Court cannot help but conclude that the silence and acquiescence of 99% of the Class Members speaks more loudly in favor of approval than the strident objections of the 1% against it."), *aff'd sub nom. Charron v. Wiener*, 731 F.3d 241 (2d Cir. 2013); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 246 F.R.D. 156, 167–68 (S.D.N.Y. 2007) ("[T]he relatively small number of objections … militate in favor of approving the settlement as fair, adequate, and reasonable.").

Even the lone Class Member who objected to the Settlement did not contend that the Settlement was unfair or inadequate.  To the contrary, she argued that the class should receive no recovery and the suit should be dismissed. This is not a proper basis for objecting to the Settlement, and the objection should be overruled. *See Perkins v. Linkedin Corp.*, 2016 WL 613255, at *4 (N.D. Cal. Feb. 16, 2016) ('Because such objections [arguing the claims lack merit] appear to support no recovery for the Class, these objectors' interests are adverse to the Class, and the objections are overruled.").[9]

---

[9] The objection is also procedurally defective because the objector did not file it with the Court in accordance with Paragraph 3.2.8 of the Settlement Agreement, Paragraph 7 of the Court's Preliminary Order, and page 6 of the Settlement Notices. *See Moore v. Verizon Communications Inc.*, 2013 WL 4610764, at *12 (N.D. Cal. Aug. 28, 2013) ("[The class member's] objection is OVERRULED because it … was not filed with the Court.").

Indeed, the risk of a dismissal or an adverse result actually ***supports*** approval of the Settlement. *See infra* at 13-15.

### C.    The Stage of the Proceedings and the Amount of Discovery Completed

Although the Settlement in this case was reached at an early stage, prior to formal discovery, that does not mean the Parties lacked sufficient information to negotiate a settlement. *See In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y. 2004) ("Formal discovery is not a prerequisite; the question is whether the parties had adequate information about their claims."). Class counsel's investigation prior to initiating the case, and review of documents exchanged informally, can generate sufficient information to negotiate a settlement. *See id*.; *Kemp-DeLisser*, 2016 WL 6542707, at *8 ("Although formal discovery had yet to occur at the time the parties engaged in settlement negotiations, Class Counsel conducted extensive investigation into the facts, circumstances, and legal issues associated with this case before agreeing to the Settlement.").

Here, Class Counsel conducted a thorough investigation of the claims that were asserted and the factual basis for those claims prior to filing this action. *First Richter Decl., ¶ 9.* Among other things, this included reviewing publicly-available information relating to the Plans, examining Plaintiffs' account statements and other documents, and conducting a comparative analysis of the expenses of the Mainstay S&P 500 Index Fund versus other alternatives in the marketplace. *Id.*  As a result of these investigatory efforts, Plaintiffs were able to file a detailed, 49-page Complaint. *See ECF No. 1.* In addition, Plaintiffs undertook informal discovery as part of the mediation process, and reviewed the documents and information provided to them by Defendants, including Plan

documents and disclosures, relevant minutes from Board meetings relating to the Plans, information regarding the Plans' holdings in the MainStay S&P 500 Index Fund, and the expenses and performance of the fund. *See supra* at 3.  Further, Class Counsel engaged a consulting expert to assist their review and analysis of the information that was provided. *Id.* This constitutes a more than adequate investigation for settlement purposes.

### D.    The Risks Associated with the Litigation

In the absence of a Settlement, Plaintiffs would have faced potential litigation risks. *See In re WorldCom, Inc. ERISA Litig.*, 2004 WL 2338151, at *6 (noting that there is a "general risk inherent in litigating complex claims such as these to their conclusion."); *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997) ("*In Re PaineWebber I*") ("Litigation inherently involves risks."). The Settlement Agreement expressly notes that "Defendants would have moved to dismiss the Complaint and would have asserted numerous defenses to the claims asserted in the Complaint." *Settlement, ¶ 1.2.* Although Plaintiffs believe there is strong support in this District for the type of claims asserted here,[10] it is uncertain whether they would have prevailed.  For example, Defendants likely would have cited decisions skeptical of Vanguard-based cost comparisons. *See Amron v. Morgan Stanley Inv. Advisors Inc.*, 464 F.3d 338, 345 (2d Cir. 2006) ("That a mutual fund has an expense ratio higher than Vanguard, a firm known for its emphasis on keeping costs low, raises little suspicion."). In addition, Defendants would have cited other authority for the proposition that plan fiduciaries are not required

---

[10] *See Moreno v. Deutsche Bank Americas Holding Corp.*, 2016 WL 5957307 (S.D.N.Y. Oct. 13, 2016) (denying motion to dismiss ERISA breach of fiduciary duty claims based, in part, on comparisons of index funds in plan to Vanguard alternatives); *Leber v. Citigroup 401(k) Investment Cmte.*, 2014 WL 4851816, at *4 (S.D.N.Y. Sept. 30, 2014) ("Essential to the plausibility of plaintiffs' claims was the allegation that the Affiliated Funds charged higher fees than those charged by comparable Vanguard funds.").

to "scour the market" for the cheapest possible funds. *See Hecker v. Deere & Co*, 556 F.3d 575, 586 (7th Cir. 2009).   As a result, Plaintiffs faced "considerable risk" in establishing liability. *Third Richter Decl., Ex. C at 8*. This weighs in favor of the Settlement. *See In re Marsh ERISA Litig.*, 265 F.R.D. 128, 140 (S.D.N.Y. 2010).

"Apart from the fundamental legal issues involved to establish liability … the potential damages recoverable by Plaintiffs [were] somewhat uncertain." *Third Richter Decl., Ex. C at 8.*   Establishing damages in an ERISA class action is a "complicated endeavor," *Kemp-DeLisser*, 2016 WL 6542707, at *9, which typically involves a battle of the experts. *See In re Marsh ERISA Litig.*, 265 F.R.D. at 140 ("The presentation of expert testimony on complex damages issues inevitably creates significant risks that Plaintiffs avoid with this Settlement."). Here, there was a significant methodological issue as to "whether Vanguard provides an appropriate measure of damages[.]" *Third Richter Decl., Ex. C at 8.* Further, as noted in the Independent Fiduciary's Report, Defendants asserted various defenses relating to Plaintiffs' claims that could have significantly limited the recovery period and reduced the recoverable damages by approximately half. *Id. at 7-8.* This further supports approval of the Settlement in this case.

Finally, at the time of Settlement, no class had yet been certified in this action. In other ERISA cases involving Class Counsel, the issue of class certification has been hotly contested. *See, e.g., Moreno v. Deutsche Bank Americas Holding Corp.*, No. 1:15-cv-09936 (class certification motion pending); *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, No. 8:15-cv-01614 (C.D. Cal.) (same); *Wildman v. American Century Serv., LLC*, No. 4:16-cv-00737 (W.D. Mo.) (same). The fact that Defendants have stipulated to

14

certification here is a further benefit of the Settlement.[11]

### E.  The Ability of Defendants to Withstand a Greater Judgment

Although New York Life has considerable assets, the "ability to withstand a higher judgment, standing alone, does not suggest that [a] settlement is unfair." *D'Amato,* 236 F.3d at 86; *see also In re Painewebber I,* 171 F.R.D. at 129, *aff'd* 117 F.3d 721 (2d Cir.1997). Because the other *Grinnell* factors "weigh heavily in favor of settlement[,]" the Settlement should be approved, notwithstanding the financial health of Defendants. *D'Amato*, 236 F.3d at 86.

### F.  The Range of Reasonableness of the Settlement Fund in Light of the Possible Recovery and Attendant Risks

As the Independent Fiduciary noted in his Report, the Settlement represents "a very meaningful recovery" for the Settlement Class. *Third Richter Decl., Ex. C at 6.* On a gross basis, the $3 million settlement amount represents over three-quarters of the estimated excess fees during the Class Period ($3.9 million). *First Richter Decl., ¶ 5.* Even on a net basis (after deduction of all requested fees, expenses and service awards), the negotiated amount still represents "half or more of the total losses asserted by Plaintiffs." *Third Richter Decl., Ex. C at 7.*  This is a more than adequate recovery. *See Velez v. Novartis Pharmaceuticals Corp.*, 2010 WL 4877852, at *14 (S.D.N.Y. Nov. 30, 2010)  ("Courts often approve class settlements even where the benefits represent 'only a

---

[11] In the context of settlement, the court need not inquire whether a trial of the action would be manageable on a class-wide basis because "the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Thus, "[t]he requirements for class certification are more readily satisfied in the settlement context than when a class has been proposed for the actual conduct of the litigation." *White v. Nat'l Football League*, 822 F. Supp. 1389, 1402 (D. Minn. 1993) (citations omitted); *see also Horton v. Metropolitan Life Ins. Co.*, 1994 U.S. Dist. LEXIS 21395, at *15 (M.D. Fla. Oct. 25, 1994).  The grounds supporting class certification for settlement purposes were previously outlined in Plaintiffs' memorandum of law in support of their motion for preliminary approval of the Settlement. *See ECF No. 65 at 15-23.*

fraction of the potential recovery.'"); *In re Checking Account Overdraft Litig.*, 830 F.R.D. 1330, 1346 (S.D. Fla. 2011) (recovery of 9 percent was reasonable); *Newbridge Networks Sec. Litig.,* 1998 WL 765724, at *2 (D.D.C. Oct. 23, 1998) ("[A]n agreement that secures roughly 6 to 12 percent of a potential recovery ... seems to be within the targeted range of reasonableness"); *In re Rite Aid Corp. Sec. Litig.,* 146 F.Supp.2d 706, 715 (E.D. Pa. 2001) (noting that since 1995, class action settlements have typically "recovered between 5.5% and 6.2% of the class members' estimated losses"). In light of the risks described above and the costs and delay associated with continuing the litigation, the settlement represents a reasonable compromise. *See Allen v. Dairy Farmers of Am., Inc.,* 2016 WL 3208947, at *6 (D. Vt. June 7, 2016) (finding a "modest" recovery was reasonable "when viewed against the backdrop of the risks of continued litigation"), *aff'd sub nom. Haar v. Allen*, 2017 WL 1387882 (2d Cir. Apr. 18, 2017) ("*Allen II*").

III.     THE SETTLEMENT PROCESS WAS FAIR, REASONABLE, AND ADEQUATE

The process by which the Settlement was reached also was fair, reasonable, and adequate. As the Court noted in its Preliminary Order: (1) "The proposed settlement resulted from arm's-length negotiations by experienced and competent counsel[12] overseen by a neutral mediator;" and (2) "The Settlement was negotiated only after Class Counsel had conducted a pre-settlement investigation and received pertinent information and documents from Defendants[.]" *ECF No. 69 at 2*; *see also Third Richter Decl., Ex. C at 7* (noting that there was a "substantial mediation and negotiation process which culminated in the Settlement"). Accordingly, the Settlement is entitled to a presumption

---

[12] Class Counsel's qualifications were set forth in the detail in connection with their prior motion for attorneys' fees. *See Second Richter Decl., ¶¶ 2-16.*

of fairness. *See Wal-Mart*, 396 F.3d at 116 ("[A] presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery") (citation omitted). This is certainly not a coupon settlement involving outsize attorneys' fees and illusory class relief where there is evidence of collusion. *See In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007) ("Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement.").[13]

## IV.   THE CLASS NOTICE WAS REASONABLE

Finally, the class notice program in this case also was reasonable and satisfied the requirements of Due Process and Rule 23.   The "best notice" practicable under the circumstances includes individual notice to all class members who can be identified through reasonable effort. Fed. R. Civ. P. 23(c)(2)(B). That is precisely the type of notice that was provided here.

As noted above, the Settlement Administrator mailed the Court-approved Settlement Notices to Class Members via U.S. Mail to their last known address.   *See supra* at 6.  This type of notice is presumptively reasonable. *See Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 812 (1985); *Langford v. Devitt*, 127 F.R.D. 41, 45 (S.D.N.Y. 1989) ("[N]otice mailed by first class mail has been approved repeatedly as sufficient notice of a proposed settlement."); *Fleisher v. Phoenix Life Ins. Co.*, 2015 WL 10847814, at *11

---

[13] Negotiating a settlement in good faith is not evidence of collusion. *See Allen II*, 2017 WL 1387882, at *1 ("[W]ith respect to the claim of collusion, the objectors appear to confuse counsel's willingness to negotiate in good faith toward a settlement with collusion with defendants."). Instead, mediation is a sensible alternative for parties to attempt "to avoid the burden, expense, and uncertainty of continued litigation." *Kemp-DeLisser,* 2016 WL 6542707, at *2.

(S.D.N.Y. Sept. 9, 2015) ("Here, the robust Notice Program, which included mailing individual Notices to the last known address of all Class members, more than meets the requirements of due process, Rule 23, and the notice standards articulated by the Second Circuit."). The record reflects that 98.6% of Settlement Notices were successfully delivered. *Simmons Decl., ¶ 12*. This confirms the effectiveness of the notice program in this case.

The content of the Notices also was reasonable. Both Settlement Notices included, among other things: (1) a summary of the lawsuit; (2) a clear definition of the Settlement Class; (3) a description of the material terms of the Settlement; (4) a disclosure of the release of claims; (5) instructions for submitting a claim (in the event one was required); (6) instructions as to how to object to the Settlement and a date by which Settlement Class members must object; (7) the date, time, and location of the final approval hearing; (8) contact information for the Settlement Administrator; and (9) information regarding Class Counsel and the amount that Class Counsel may seek in attorneys' fees and expenses. *See Simmons Decl., Exs. 1 & 2.* This was more than sufficient to "apprise the prospective members of the class of the terms of the proposed settlement and of the options … open to them in connection with the proceedings." *Wal-Mart Stores*, 396 F.3d at 114 (quoting *Weinberger*, 698 F.2d at 70); *see also In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (settlement notice "need only describe the terms of the settlement generally"). Notably, no Settlement Class Member has claimed that the Notices were deficient, and to the extent they had any questions, they could review the settlement website, call the toll-free telephone line, or contact the Settlement Administrator or Class Counsel.

## CONCLUSION

For the foregoing reasons, the Court should enter an order granting final approval of the Settlement in the form submitted herewith.

Dated: June 1, 2017          **NICHOLS KASTER, PLLP**

         _/s/ Kai H. Richter_____
Michelle R. Fisher, NY Bar Code #MF4600
Kai H. Richter, MN Bar No. 0296545*
Carl F. Engstrom, MN Bar No. 0396298*
Brandon T. McDonough, MN Bar No. 0393259*
4600 IDS Center, 80 S. 8th Street
Minneapolis, MN 55402
Tel: 612-256-3200
Fax: 612-338-4878
fisher@nka.com
krichter@nka.com
cengstrom@nka.com
bmcdonough@nka.com
*admitted _pro hac vice_

_Attorneys for Plaintiffs_